US DISTRICT COURT
WESTERN DIST ARKANSAS
FILED

JUN 18 2018

DOUGLAS F. YOUNG, Clerk
By          Deputy Clerk

**IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION**

**HENRY LAW FIRM**                                                              **PLAINTIFF**

**V.**                                      **CASE NO. 5:18-CV-5066**

**CUKER INTERACTIVE, LLC, and
ADEL ATALLA**                                                                **DEFENDANTS**

## MEMORANDUM OPINION AND ORDER

Currently before the Court are Defendants Cuker Interactive, LLC's ("Cuker") and

Adel Atalla's Motion to Dismiss, or, in the Alternative, Transfer (Doc. 7) and Brief in Support

(Doc. 8), Plaintiff Henry Law Firm's ("HLF") Response in Opposition (Doc. 11), and

Defendants' Reply (Doc. 12). For the reasons set forth below, the Motion is **DENIED**.

## I. BACKGROUND

According to the Complaint (Doc. 1), HLF is a sole proprietorship with its principal

place of business in Fayetteville, Arkansas. Defendant Cuker is a California limited liability

company that hired HLF to represent it in federal litigation in the Western District of

Arkansas, Fayetteville Division. The undersigned presided over that case, and is therefore

very familiar with it. Defendant Atalla is President of Cuker and personally guaranteed

Cuker's financial obligations to HLF under the legal services contract. Like Cuker, Mr.

Atalla is a citizen of California. The Court therefore has jurisdiction over this matter

pursuant to 28 U.S.C. § 1332, due to the fact that there is complete diversity of citizenship

among the parties, and the amount in controversy exceeds $75,000.00.

The single Count in the Complaint alleges that Cuker now refuses to pay HLF the

legal fees that HLF earned in the underlying lawsuit. It is necessary for the court to provide

a little background on that lawsuit in order to place the case at bar in context. Cuker was

sued by Wal-Mart Stores, Inc. ("Walmart") in the Circuit Court of Benton County, Arkansas, in July of 2014. Cuker and Walmart had entered into a consulting agreement in which Walmart had agreed to pay Cuker a fixed fee in exchange for Cuker developing certain functional aspects of Walmart's ASDA Groceries website. The parties soon disagreed about such things as deadlines, when installment payments were due, and whether certain assignments were included in the scope of the contract. Eventually, the parties' relationship soured to the point that Walmart sued Cuker for breach of contract and declaratory judgment. Cuker then removed the case to this Court in August of 2014, and the matter was assigned Case Number 5:14-CV-5262. By September of 2014, Cuker had filed an answer to the complaint and six counterclaims against Walmart for declaratory judgment, fraudulent inducement, misappropriation of trade secrets, breach of contract, unjust enrichment, and injunctive relief. Cuker also admitted in its answer "that this Court has personal jurisdiction of the parties and that this Court is a proper venue for this case." Case Number 5:14-CV-5262, Doc. 9, p. 1. Jurisdiction and venue were also admitted in Cuker's counterclaims. *See id.* at 11.

Approximately two years after the Walmart litigation began, Cuker's legal team resigned from the case. Cuker's attorneys from the law firm of Pillsbury Winthrop Shaw Pittman, LLP ("Pillsbury"), and from the law firm of Shults & Brown, LLP, filed motions to withdraw, explaining that Cuker had failed to comply with its obligations under the two firms' legal services agreements. On February 8, 2016, the Court allowed the attorneys to withdraw, but directed Cuker to secure new counsel no later than March 25, 2016. *See* Doc. 78.

It was at that point that Arkansas attorney Mark Henry of HLF was hired to represent Cuker in the Walmart case. Mr. Henry entered his appearance on Cuker's behalf on March 21, 2016, having signed a legal services contract with Cuker and Mr. Atalla (as Cuker's personal guarantor) just the day before. *See* Case No. 5:18-CV-5066, Doc. 1, pp. 6-8. The Walmart litigation proceeded from there, with HLF taking the lead role in litigating the case on Cuker's behalf. After a bitter and contentious period of discovery, followed by cross-motions for summary judgment, the case was finally ready for trial on April 10, 2017, nearly three years after the lawsuit commenced.

At the conclusion of the two-week-long trial, the jury returned a verdict in Cuker's favor on its counterclaims and awarded it a total of $12,438,665.00 in damages. The Court personally observed that Mr. Henry acted as lead counsel to Cuker during the trial, just as he had in the year preceding trial. *See also* Case No. 5:18-CV-5066, Doc. 89-1, p. 2. Once the trial was over, Walmart and Cuker entered into a joint stipulation concerning Walmart's liability on one of Cuker's counterclaims. This joint stipulation had the effect of reducing the total jury award to Cuker to $10,197,065.00. *See* Case No. 5:14-CV-5262, Doc. 483, p. 9. Walmart then filed a motion for judgment as a matter of law under Federal Rule of Civil Procedure 50(b), and Cuker filed a motion for attorney's fees and costs, as well as a request for sanctions against Walmart. The Court ruled on all post-trial motions in an omnibus order entered on March 31, 2018, *see id.* at Doc. 524, granting in part and denying in part Walmart's Rule 50(b) motion and further reducing Cuker's damages award to $745,021.00, *see id.* at Doc. 525. The Court granted Cuker's motion for attorney's fees

and costs, finding that Cuker was entitled to an award of reasonable fees totaling $2,174,073.11.[1] *Id.* at Doc. 524, p. 43.

In ruling on Cuker's request for fees in the Walmart case, the Court observed the following:

> In especially complex litigation, or where the parties have agreed on a particular rate, this Court has approved fees of up to $350 per hour. Here, both the subject matter and the legal issues were exceedingly complex, and Cuker's counsel was among the best prepared that this Court has ever encountered.

*Id.* at Doc. 524, p. 41. The Court also opined that Cuker's counsel had obtained "excellent results" for their client, had "substantially prevailed on the primary contract claims and defenses," and were "successful in convincing the jury that [Cuker] should prevail across the board on its trade secret claims." *Id.* at 42.

Cuker filed a notice of appeal in the Eighth Circuit as to the reduction of the jury verdict, among other things. Walmart then filed a cross-appeal. Those appeals are still awaiting resolution. In the meantime, HLF filed the instant lawsuit, alleging that its former client, Cuker, and Cuker's president, Mr. Atalla, currently refuse to pay HLF's legal bills for work completed during the Walmart litigation. *See* Case No. 5:18-CV-5066, Doc. 1, p. 4. HLF therefore demands payment for its share of the legal bills awarded by the Court: $1,200,376.52. In response to HLF's Complaint, Defendants move to dismiss the case, asserting a lack of personal jurisdiction over each Defendant, or in the alternative, they

---

[1] By that point, Mr. Henry's law firm was not the only one representing Cuker. The two Pillsbury attorneys who had previously withdrawn from the case reentered their appearances in December of 2016, a few months prior to trial.

request that the case be transferred to a district closer to home, the Southern District of California.

Cuker and Mr. Atalla are tired of litigating in Arkansas. They remind the Court that they "just concluded proceedings here" in the Walmart case, and they have "no desire to continue litigating matters in this district . . . ." *Id.* at Doc. 8, p. 1. They attempt to minimize Cuker's contacts with Arkansas by insisting that "Cuker's representatives traveled to Arkansas on just a handful of occasions, including for the two-week trial, two depositions, and a court-mandated settlement conference." *Id.* at 2. They view Mr. Atalla's contacts with Arkansas as "even less substantial" than Cuker's, and they appear mystified as how HLF could think it reasonable to sue Mr. Atalla personally in this forum. *Id.* Defendants further remind the Court that Mr. Atalla "was not a named party in the Walmart Litigation and was not a client of Plaintiff during [sic] at any point. Instead, he merely served as guarantor of the contract between Cuker and Plaintiff." *Id.*

Below, the Court will review the legal standards governing both personal jurisdiction and venue. Then the Court will consider Defendants' request to dismiss, followed by their alternative request to transfer the case to California.

## II. LEGAL STANDARD

### A. Personal Jurisdiction

"To allege personal jurisdiction, a 'plaintiff must state sufficient facts in the complaint to support a reasonable inference that the defendant can be subjected to jurisdiction within the state.'" *Wells Dairy, Inc. v. Food Movers Int'l*, 607 F.3d 515, 518 (8th Cir. 2010) (quoting *Dever v. Hentzen Coatings, Inc.*, 380 F.3d 1070, 1072 (8th Cir. 2004)) (alteration omitted). The Court "must view the evidence in the light most favorable to the plaintiff and resolve

all factual conflicts in the plaintiff's favor." *Digi-Tel Holdings, Inc. v. Proteq Telecomm. (PTE), Ltd.*, 89 F.3d 519, 522 (8th Cir. 1996). However, the Plaintiff bears the burden of proving sufficient facts to support a prima facie showing of personal jurisdiction. *Id.* Importantly for the present case, personal jurisdiction must be assessed with regard to each Defendant. *See Rush v. Savchuk*, 444 U.S. 320, 332 (1980).

There are two parts to any personal jurisdiction analysis: determining whether the state's long-arm statute permits service of process and analyzing whether there are sufficient minimum contacts with the forum such that maintaining the action would not violate due process. As to the first, the Arkansas long-arm statute authorizes the exercise of personal jurisdiction to the maximum extent permitted by the Due Process Clause of the Fourteenth Amendment. Ark. Code Ann. § 16-4-101(B); *see also Epps v. Stewart Info. Serv. Corp.*, 327 F.3d 642, 647 (8th Cir. 2003). As a result, whether this Court can exercise personal jurisdiction over these Defendants will depend upon whether they have sufficient contacts with Arkansas such that maintaining this suit here would comport with due process. *Dever*, 380 F.3d at 1073.

The Due Process Clause allows courts to exercise personal jurisdiction only when a defendant has "certain minimum contacts" with the forum state "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). This standard "presaged the development of two categories of personal jurisdiction": general jurisdiction and specific jurisdiction. *Daimler AG v. Bauman*, 134 S. Ct. 746, 754 (2014).

General jurisdiction allows a court to hear "any and all claims" against a defendant. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011). In the case

of a defendant corporation, the Due Process Clause permits a court to exercise general jurisdiction only when the defendant's "affiliations with the State are so continuous and systematic as to render them essentially at home in the forum State." *Id.* (internal quotation marks omitted). "The place of incorporation and principal place of business" are the "paradigm bases for general jurisdiction" over a corporation. *Daimler*, 134 S. Ct. at 760 (alteration and internal quotation marks omitted).

"Specific jurisdiction, on the other hand, depends on an affiliation between the forum and the underlying controversy, principally, activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." *Goodyear*, 564 U.S. at 919 (alteration and internal quotation marks omitted). Its exercise is "confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction." *Id.* (internal quotation marks omitted). "The inquiry whether a forum State may assert specific jurisdiction over a nonresident defendant focuses on the relationship among the defendant, the forum, and the litigation." *Walden v. Fiore*, 134 S. Ct. 1115, 1121 (2014) (quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 775 (1984)) (internal quotation marks omitted).

The Eighth Circuit has crafted a five-part test to help district courts determine whether a defendant has sufficient minimum contacts with the forum: (i) the nature and quality of contacts with the forum state; (ii) the quantity of such contacts; (iii) the relation of the cause of action to the contacts; (iv) the interest of the forum state in providing a forum for its residents; and (v) the convenience of the parties. *Land-O-Nod Co. v. Bassett Furniture Indus., Inc.*, 708 F.2d 1338, 1340 (8th Cir. 1983).

## B. Transfer

When evaluating a motion to transfer pursuant to 28 U.S.C. § 1404(a), absent a forum-selection clause, courts must consider the convenience of the parties and the public interest. *Rob & Bud's Pizza, LLC v. Papa Murphy's Intern.*, 2015 WL 3901611, at *4 (W.D. Ark. June 24, 2015) (citing *Atl. Marine Const. Co., Inc. v. U.S. Dist. Court for the W. Dist. of Tex.*, 134 S. Ct. 568, 581 & n.6 (2013)). The parties' convenience factors include their access and ease of access to sources of proof, the availability of witnesses, the possibility that a view of the premises would be necessary, and any other realistic problems that make trial easy. *Id.* (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1981)). The public interest factors include the administrative difficulties pertaining to court congestion, the state's local interest in the dispute, the interest in having a court in a diversity case apply the forum-state law that governs the suit, the ability to avoid unnecessary conflicts of law problems, and "the unfairness of burdening citizens in an unrelated forum with jury duty." *Id.* (citations omitted).

## III. DISCUSSION

### A. Personal Jurisdiction

HLF has elected to bring its lawsuit for breach of contract against its former client, Cuker, and Cuker's President and personal guarantor, Mr. Atalla. Personal jurisdiction must be assessed with regard to each Defendant. *See Rush*, 444 U.S. at 332. In determining whether Cuker and Mr. Atalla have sufficient minimum contacts with Arkansas as to subject them to suit here, the Court begins first with the question of whether the Court may exercise either general or specific jurisdiction over either Defendant. To exercise general jurisdiction over a corporation or individual, generally the party in question must be

8

a citizen of the subject jurisdiction. Accordingly, the general jurisdiction analysis is not worth further mention in this Order, as both Cuker and Mr. Atalla are citizens of California. The more relevant question is whether the Court may exercise specific jurisdiction over either Defendant, depending on the facts surrounding their affiliation with Arkansas in the instant dispute.

The Eighth Circuit's five-part minimum-contacts test for specific jurisdiction explores the following factors: (i) the nature and quality of the defendant's contacts with the forum state; (ii) the quantity of such contacts; (iii) the relation of the cause of action to the contacts; (iv) the interest of the forum state in providing a forum for its residents; and (v) the convenience of the parties. *Land-O-Nod Co.*, 708 F.2d at 1340.

Once minimum contacts are established as to a particular defendant, the burden shifts back to the defendant to present "a compelling case that jurisdiction would be unreasonable." 4C Wright & A. Miller, Federal Practice and Procedure § 1067 at 301–02 (1987) ("the burden of showing minimum contacts continues to lie with the plaintiff, but . . . once a prima facie showing is made, it becomes the defendant's burden to convince the court that the assertion of jurisdiction would be unreasonable."). The Defendants in this case have limited their argument to whether they have sufficient minimum contacts with Arkansas. Accordingly, the Court will consider only the minimum contacts issue and will not discuss other factors the Supreme Court has considered in determining whether a specific assertion of jurisdiction is unreasonable despite the existence of minimum contacts. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1986) (quoting *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980)).

9

## 1. Cuker

The nature and quality of Cuker's contacts with Arkansas in the case at bar flow directly from Cuker's decision *to solicit* HLF—an Arkansas law firm—to assist Cuker in its lawsuit with Walmart—a company headquartered in Arkansas. Cuker was well aware when it entered into the legal services contract with HLF that the legal work the law firm performed would be done in Arkansas in anticipation of a complex jury trial in an Arkansas federal court. It is equally obvious that the quantity of Cuker's contacts with HLF, made during the year-long period Mr. Henry served as counsel to Cuker in the Walmart case, is sufficient to meet the legal threshold for minimum contacts with the forum. In point of fact, *all* of Cuker's contacts with HLF were purposefully directed to the forum. To suggest, as Cuker's counsel does in the Motion to Dismiss, Doc. 8, pp. 3-4, that the number of contacts between Cuker and HLF was somehow insufficient to put Cuker on notice that it was availing itself of the State's forum is, in a word, ludicrous.

The instant lawsuit arose from the business relationship between Cuker and HLF, which Cuker sought out when it engaged Mr. Henry and his firm as its legal representative. Cuker "'purposefully directed' its activities at a resident of the forum, and the litigation [at issue now] results from alleged injuries that 'arise out of or relate to' those activities." *Burger King*, 471 U.S. at 472 (cleaned up and citation omitted).[2] The first three *Land-O-Nod* factors that evaluate minimum contacts—namely, the nature and quality of the contacts, the quantity of the contacts, and the relation of the cause of action to the

---

[2] The parenthetical "(cleaned up)" may be used "when extraneous, residual, non-substantive information has been removed" from a citation—such as bracketed modifications, internal quotation marks, or duplicative parentheticals. *United States v. Steward*, 880 F.3d 983, 986 & n.2 (8th Cir. 2018).

contacts—decisively weigh in favor of finding that Cuker is subject to specific personal jurisdiction in Arkansas.

As for the fourth *Land-O-Nod* factor—the interest of the forum state in providing a forum for its residents—this also weighs in HLF's favor. "A State generally has a 'manifest interest' in providing its residents with a convenient forum for redressing injuries inflicted by out-of-state actors." *Burger King*, 471 U.S. at 473. The facts of the Complaint—assumed as true in this early stage of the litigation—show that Cuker "'purposefully derive[d] benefit' from [its] interstate activities," *id.* at 474 (quoting *Kulko v. Cal. Sup. Court*, 436 U.S. 84, 96 (1978)), and it would therefore be "unfair to allow it to escape having to account in another State for consequences that arise proximately from such activities . . . ." *Id.* (cleaned up). Cuker fails to acknowledge the fact that it voluntarily assumed certain obligations under the legal services contract it entered into with HLF. Cuker made purposeful contact with HLF, which resulted in the contractual relationship that is the subject of this lawsuit. Therefore, Cuker was on fair notice that it should reasonably anticipate being haled into court in Arkansas for any dispute involving the contract. As the Supreme Court noted in *Burger King*, "the Due Process Clause may not readily be wielded as a territorial shield to avoid interstate obligations that have been voluntarily assumed." 471 U.S. at 474.

As for the fifth *Land-O-Nod* factor—the convenience of the parties—this is neutral and therefore of little importance in the overall minimum-contacts analysis. HLF would find it more convenient to litigate in Arkansas, and Cuker would find it more convenient to litigate in California. Though Cuker admits that it "hired Plaintiff to serve as local counsel as part of its litigation team," and cannot deny that Mr. Henry shouldered the burden of

11

serving as lead counsel during the two-week Walmart trial (which the undersigned directly observed), Cuker now complains that its interest in appearing before this Court has waned, and it would really rather avoid litigating in Arkansas again. *See* Doc. 8, pp. 1-2. Frankly, the Court lacks sympathy for Cuker's "plight," as it is one that Cuker created through its own affirmative actions. "[W]here the defendant . . . has created continuing obligations between [it]self and residents of the forum, [the defendant] manifestly has availed [it]self of the privilege of conducting business there, and because [the defendant's] activities are shielded by the benefits and protections of the forum's laws it is presumptively not unreasonable to require him to submit to the burdens of litigation in that forum as well." *Burger King*, 471 U.S. at 475-76. For all these reasons, the Court finds that specific jurisdiction over Cuker is appropriate in this forum.[3]

---

[3] In addition, though neither party argued this point in their briefing, the Court believes that Cuker may also be judicially estopped from claiming that the Court lacks personal jurisdiction over it, considering the facts of this particular case. "The doctrine of judicial estoppel prohibits a party from taking inconsistent positions in the same or related litigation." *Hossaini v. Western. Mo. Med. Ctr.*, 140 F.3d 1140, 1142 (8th Cir. 1998). The instant case is directly related to and flows from the Walmart case in which Cuker voluntarily submitted to this Court's jurisdiction and pursued a counterclaim against Walmart. Although in general a party's decision to submit to the a court's jurisdiction in one case does not necessarily obligate the party to submit to the court's jurisdiction for all time, in perpetuity, the Court finds that Cuker's position in the Walmart case and in the case at bar, concerning fees earned by Cuker's attorneys in that case, to merit special attention. In the Walmart case, Mr. Henry, along with his co-counsel, tried Cuker's counterclaims to a jury and won, resulting in a multi-million-dollar verdict against Walmart. After the jury verdict, *Cuker* petitioned this Court for fees, and the Court granted them, ordering *Walmart to reimburse Cuker* for attorney fees that it reasonably incurred, including all such fees billed to Cuker by HLF. Now, it seems, Cuker has reversed itself on a number of positions it previously took before this Court, including the issue of personal jurisdiction. In its Joint Rule 26(f) Report, Cuker advises that it intends to argue: (1) that HLF is *not* entitled to the fees the Court awarded, and (2) that HLF committed legal malpractice in failing "to pursue crucial evidence of misappropriation and coercion and failure to obtain injunctive relief . . . ." (Doc. 14, p. 2).

## 2. Mr. Atalla

Mr. Atalla, as Cuker's President, personally guaranteed Cuker's monetary obligation to HLF under the legal services contract that is at issue in the case at bar. In the Eighth Circuit's decision in *Arkansas Rice Growers Cooperative Association v. Alchemy Industries, Inc.*, the Court concluded that neither "[t]he mere fact that the individual defendants guaranteed an obligation to an Arkansas corporation" nor "the guarantors' status as shareholders in . . . the debtor corporation" were sufficient to establish the necessary minimum contacts. 797 F.2d 565, 573 (8th Cir. 1986). However, in reaching this conclusion,

the Court clearly distinguished its holding from cases in which there were facts to show a "substantive identity" between a guarantor and his company, or evidence that the beneficiary of the guarantee contract "would not have entered into the transaction without the guarantee of a specific individual." *Id.* at 573–74 (citations omitted).

In the case at bar, the contract between the parties indicates that Mr. Atalla was an officer of Cuker seeking to benefit from the legal services contract with HLF, and, if not for Mr. Atalla's personal guarantee, HLF would never have agreed to the legal engagement with Cuker. The contract provides, clearly, that it is "between Henry Law Firm ('HLF') and Cuker Interactive, LLC and Adel Atalla (guarantor) (*together* 'Client')." (Doc. 1, p. 6 (emphasis added)). In paragraph 10 of the contract, it states:

> Client understands and agrees that HLF is entitled to rely on this Agreement and Clients' signature below, and that HLF may have certain rights under the Arkansas Attorney Lien statute for all or a portion of the agreed fee if Client elects to retain other counsel or attempts to proceed without an attorney.

*Id.* at 7-8. The Court finds that by virtue of signing the contract as personal guarantor for his company, Mr. Atalla was placed on notice that he was subject to suit in the same manner that Cuker was. He therefore cannot make the argument he attempts to make now: that he, personally, did not seek out a business relationship with HLF in Arkansas and consequently had no minimum contacts with Arkansas. The corporate shield that would perhaps otherwise safeguard Mr. Atalla from having to appear before an Arkansas court in this lawsuit disappeared the moment he personally guaranteed Cuker's performance on the contract. Moreover, to find that the Court has personal jurisdiction over Cuker, but not over Cuker's personal guarantor of the contract at issue, would lead to an unjust result.

Accordingly, the Court finds that HLF has met its burden of proving facts that support personal jurisdiction over Mr. Atalla. Mr. Atalla admits in his own declaration that he is "deeply involved in the day-to-day management and administration of Cuker." (Doc. 8-1, p. 2). He admits to traveling to Arkansas "on two occasions: to meet with [another attorney] at his office and for the deposition of a Walmart witness at the Kutak Rock law firm." *Id.* at 4. He also admits to "exchang[ing] a couple phone calls and emails with Mark Henry" before "ultimately decid[ing] to retain him." *Id.* at 3. Then, Mr. Atalla admits that after HLF was retained by Cuker to represent it in the Walmart lawsuit, he took "three additional trips to Arkansas," meeting with Mr. Henry at his law firm for a status update on one occasion, attending a deposition on another, and attending a court-ordered mediation on behalf of Cuker on yet another. *Id.* at 4. These emails, phone calls, and visits to Arkansas that Mr. Atalla admits to are, in and of themselves, sufficient to meet the threshold for establishing personal jurisdiction in the instant case, which arises directly from HLF's representation of

14

Cuker in the Walmart case. If that were not enough, Mr. Henry's declaration reveals that he was the recipient of 789 emails from Mr. Atalla, all related to the Walmart litigation and HLF's legal representation. *See* Doc. 11-2.

For all of the above reasons, the first four *Land-O-Nod* factors weigh in favor of finding that the Court has personal jurisdiction over Mr. Atalla, while the fifth factor—the convenience of the parties—remains neutral, just as it was for Cuker. Mr. Atalla is properly before this Court in the case at bar.

## B. Venue

The Court now considers Defendants' alternative request to transfer this case to the Southern District of California, pursuant to 28 U.S.C. § 1404(a), "for the convenience of the parties and witnesses, [and] in the interest of justice . . . ." District courts possesses the discretion under this transfer statute "to adjudicate motions for transfer according to an individualized, case-by-case consideration of convenience and fairness." *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988). However, because "federal courts give considerable deference to a plaintiff's choice of forum . . . the party seeking a transfer under section 1404(a) typically bears the burden of proving that transfer is warranted." *Terra Int'l v. Miss. Chem. Corp.*, 119 F.3d 688, 695 (8th Cir. 1997).

### 1. Convenience Factors

Courts have considered a host of relevant factors that directly bear upon the convenience of litigating in a particular court, including the convenience of the parties, the convenience of the witnesses, the accessibility to records and documents, the location where the conduct complained of occurred, and the applicability of each forum state's substantive law. *Terra Int'l*, 119 F.3d at 696. Of the convenience factors, many courts

15

consider the convenience of the witnesses to be the most important. *See* Charles Alan Wright, Arthur R. Miller, & Edward H. Cooper, Fed. Practice and Procedure § 3851 n.1 (4th ed. 2017) (listing cases).

In considering these factors, the Court is unpersuaded that any of them weigh in favor of litigating in California. Because witnesses may be needed from both California and Arkansas, and because the parties are from those two states, the argument that California is somehow more convenient for both the witnesses and the parties is completely unavailing. As previously noted, the conduct that is at issue in this lawsuit concerns the work that HLF attorneys undertook, at least for the most part, in Arkansas, on a lawsuit that eventually went to trial in Arkansas. Moreover, the documents and other evidence that will be needed to prove whether legal services were, in fact, provided, and whether Cuker and Mr. Atalla breached their obligations to HLF will be located in Arkansas. Accordingly, it is not more convenient to relocate this case to California.

## 2. Interest of Justice Factors

Other factors the Court must consider in a transfer analysis are: (1) judicial economy, (2) the plaintiff's initial choice of forum, (3) the comparative costs to both parties litigating in the different forums, (4) enforceability issues for any resulting judgment, (5) obstacles to a fair trial, (6) conflict of law concerns, and (7) the advantages of having a local court determine questions of local law. *Terra Int'l*, 199 F.3d at 696. Interestingly, in Defendants' Brief in support of Transfer, they acknowledged that "[t]hese factors are largely a wash, as there should be no concerns regarding enforceability, obstacles to a fair trial, conflict of laws, or local issues necessitating on [sic] forum over another." (Doc. 8, p. 19). The Court agrees. This means the only factors that are left to be considered are the

16

Plaintiff's choice of forum—Arkansas—and any relevant concerns about judicial economy. For reasons that should be obvious from the Court's previous discussion, judicial economy favors litigating this case in the Western District of Arkansas. The quality of the legal services that HLF provided Cuker in the underlying Walmart litigation is an issue that this Court is very familiar with, having presided over the Walmart case from the time of its removal to federal court, and having ruled upon Cuker's motion for attorney's fees in the Walmart case. To order the case transferred to a forum that has no familiarity with these issues would result in an egregious waste of judicial resources. The request to transfer is denied.

## IV. CONCLUSION

**IT IS ORDERED** that Defendants Cuker Interactive, LLC's ("Cuker") and Adel Atalla's Motion to Dismiss, or, in the Alternative, Transfer (Doc. 7) is **DENIED**. Defendants are **DIRECTED** to file their Answer by no later than **June 25, 2018**.

**IT IS FURTHER ORDERED** that **ALL PARTIES AND THEIR ATTORNEYS** must **appear in person** at the Court's Case Management Hearing on **June 26, 2018**. To the extent the Court granted any attorney permission to appear at the hearing by telephone, rather than in person, that permission is hereby **RESCINDED**, and all attorneys and their clients will be expected to appear in person on June 26.

**IT IS SO ORDERED** on this __18th__ day of June, 2018.

TIMOTHY L. BROOKS
UNITED STATES DISTRICT JUDGE

17