**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF ARKANSAS**
**FAYETTEVILLE DIVISION**

**HENRY LAW FIRM**                                                                    **PLAINITFF**

**VS.**                                      **CASE NO. 5:18-CV-5066**

**CUKER INTERACTIVE, LLC and**                                      **DEFENDANTS**
**ADEL ATALLA**

**MEMORANDUM IN SUPPORT OF DEFENDANT**
**ADEL ATALLA'S RESPONSE IN OPPOSITION TO**
**PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

**I.**

**INTRODUCTION**

Because the automatic bankruptcy stay is in effect as to Cuker Interactive, LLC

("Cuker"), this Response in Opposition is filed as to Defendant Adel Atalla ("Atalla") only.  The

Motion for Summary Judgment should be denied, for three reasons.

First, there is no valid personal guaranty through which Atalla can be a guarantor of

Cuker's obligations under the contract for legal representation ("the contract") with Plaintiff

Henry Law Firm ("HLF").  Under Arkansas law, a guaranty is a collateral undertaking by a third

party to answer for the payment of a debt of the principal obligor.  The guaranty is distinct from

the principal obligation, and the guarantor cannot be held liable beyond the ***strict terms*** of the

guaranty contract.  Here, there is no collateral or separate agreement providing for a guaranty.

HLF claims the guaranty is contained in the contract, but the contract contains absolutely no

terms relating to a guaranty.  The contract merely labels Atalla as "guarantor" in the opening

paragraph and signature block.  Without any specific terms forming the basis for a separate

guaranty contract, there can be no valid guaranty under Arkansas law.

Second, even if there were a valid guaranty here, HLF is not entitled to summary

1

judgment for the amount it seeks.  A guarantor is only liable to the extent of the principal

obligor, meaning that if Atalla were a guarantor, he cannot be liable to a greater extent than

Cuker.  The amount HLF claims in its Motion is based on the amounts in its invoices.  However,

on many instances, HLF billed for the work of two lawyers at an hourly rate than is greater than

specified in the contract.  The over-billing for one lawyer totaled $106,502.30, and the over-

billing for the other law totaled $7,766.25, for a combined total of $114,268.55.  There is thus, at

the very least, a genuine issue of material fact as to the amount Cuker owes under the contract.

Third, there is a genuine issue of material fact as to the reasonableness of certain of the

fees billed because of what courts have called the disfavored practice of block billing.  There are

a number of instances where the amount of time spent by an attorney or other person on each

discrete task were not identified, but instead all hours spent during the course of a day on

multiple tasks were billed together.  There are also instances where a large amount of time was

billed for a non-specific task.  Perhaps the most notable example is one, single billing entry of

62.5 hours on one day – without explanation of how that is even possible – for "intensive review

of Wipro discovery."  Under the Rules of Professional Conduct, an attorney's fees must be

reasonable, and the trier of fact must evaluate these block-billing items to determine if they are

reasonable.

HLF's Motion for Summary Judgment should therefore be denied.

## II.

## <u>STATEMENT OF FACTS</u>

Cuker was a defendant and counterclaimant in a lawsuit initially brought against it in this

Court by Wal-Mart Stores, Inc, Case No. 5:14-cv-5262.  Plaintiff's Exhibit 1, ¶ 1.  HLF

represented Cuker in the Walmart case pursuant to the contract.  Id.  The first paragraph of the

contract identifies Atalla, Cuker's President, as "guarantor," and there is a signature block for

Atalla identifying him as "individual guarantor.  Id.  The contract contains no terms relating specifically or separately to any alleged guaranty.  Id.

The contract identifies the hourly rates Cuker is to pay for HLF's work on the Walmart case: $385 per hour for Mark Henry; $245 per hour for Adam Hopkins; $150 per hour for "associate attorneys;" $100 per hour for investigators; and $80 per hour for "paralegals and assistants, where appropriate."  Plaintiff's Exhibit 1, ¶ 4.

In its invoices submitted to Cuker, HLF billed Cuker $106,502.30 for the work of attorney John Pesek in excess of the hourly rate authorized by the contract.  HLF billed Cuker $7,766.25 for the work of attorney Adam Hopkins in excess of the rate specified by the contract for his work.  Declaration of Brian P. Worthington, filed herewith, ¶¶ 2-6.

HLF filed this lawsuit in April 2018, alleging one claim for breach of contract.  HLF contends that Cuker is liable under the contract for amounts in its invoices that have not yet been paid.  HLF alleges that Atalla is a personal guarantor of Cuker's obligations under the contract, and is liable for the amounts in the invoices not yet paid based on Cuker's default.

Cuker filed its Motion for Summary Judgment on November 23, 2018.  On December 13, 2018, Cuker filed a Petition under Chapter 11 of the United States Bankruptcy Code in the United States Bankruptcy Court for the Southern District of California, Case No. 18-07363-11.  Cuker then filed a Notice of Automatic Stay in this Court.  Dkt. 104.  Because the Chapter 11 filing prohibits the continuation of any judicial action against the debtor, this case is stayed as to Cuker.  For that reason, this Response in Opposition is filed only as to Adel Atalla, individually.

### III.

### ARGUMENT

A motion for summary judgment provides a procedure for terminating without trial actions in which "there is no genuine dispute as to any material fact and the movant is entitled to

judgment as a matter of law." Fed.R.Civ.P 56(a).  An opposing party may establish a genuine dispute of material facts, and defeat summary judgment, by citing to particular materials in the record that show such dispute, or by showing that the moving party's materials fail to establish absence of a genuine dispute.  Fed.R.Civ.P. 56(c)(1)(A) & (B).

A court must view all inferences to be drawn from the facts in a light most favorable to the party opposing the motion.  *Froholm v. Cox*, 934 F.2d 959, 961 (8th Cir. 1991). Circumstantial evidence alone may create a genuine issue of material fact, sufficient to defeat a motion for summary judgment.  *Metropolitan Property. & Cas. Ins. Co. v. Calvin*, 802 F.3d 933, 940 (8th Cir. 2015).  There is a genuine issue of material fact if the evidence is sufficient to allow a reasonable jury to return a verdict for the non-moving party.  *Crumley v. City of St. Paul, Minn.*, 324 F.3d 1003, 1006 (8th Cir. 2003).

A.     **There is no personal guaranty because the contract contains no separate terms <u>regarding any guaranty, as required under Arkansas law.</u>**

The sole basis for HLF's claim against Atalla, as an individual, is that Atalla is allegedly a personal guarantor of Cuker's obligations.  The only document purportedly containing the personal guaranty by Atalla is the contract.  The contract, as drafted, is insufficient under Arkansas law[1] to create a personal guaranty by Atalla.  Atalla contends there is no guaranty as a matter of law, but alternatively, at the very least, the contract is ambiguous on this issue and there is a genuine issue of material fact as to the parties' intent.

"A guaranty is a collateral undertaking by one person to answer for the payment of a debt of another." *First American National Bank v. Coffey-Clifton, Inc.*, 276 Ark. 250, 252, 633 S.W.2d 704, 705 (1982).  "A guarantor is one who makes a contract, ***distinct from the principal obligation***, to be collaterally liable to the creditor if the principal fails to perform." *Id.* (emphasis

---

[1] Because this case is in this Court based diversity jurisdiction, state law governs substantive issues.  *Archer v. Pavement Specialist, Inc.*, 278 F.3d 845, 846-847 (8th Cir. 2002).

added).  "The undertaking of the principal debtor is independent of the promise of the guarantor."  *Id.*  " Upon default of the principal debtor and satisfaction of conditions precedent to liability, promise of guarantor becomes absolute."  *Id.*

"A guarantor is entitled to a strict construction of his undertaking and cannot be held liable ***beyond the strict terms of his contract***."  *National Bank of East Arkansas v. Collins*, 236 Ark. 822, 826, 370 S.W.2d 91, 93-94 (1963) (emphasis added).  "A guarantor, like a surety, is a favorite of the law, and his liability is not to be extended by implication beyond the express limits or terms of the instrument, or its plain intent."  *Id.*, 370 S.W.2d at 94.

Under these standards, the contract fails to constitute a valid personal guaranty.  As noted, a personal guaranty is a "collateral undertaking."  The guaranty is a "separate undertaking" from the principal obligation, and the guarantor cannot be held liable beyond the strict terms of his or her own contract.  There is no separate contract or collateral agreement here.  HLF claims that Atalla's personal guaranty is contained within the contract.

Theoretically, a guaranty could be contained within the same instrument as the principal obligation, but the contract does meet the standards for a collateral agreement or separate undertaking by Atalla.  The very first paragraph references Atalla as "guarantor," and the signature line for Atalla describes him as "individual guarantor."  Plaintiff's Exhibit 1.  Other than that, there is no separate reference to Atalla anywhere in the contract.  The entirety of the contract – other than the use of these terms in these two places – discusses the terms of HLF's representation of Cuker in the Walmart case and Cuker's obligations under the contract.  There is no specification of any specific terms of the guaranty, such as precisely when the supposed guarantor would become liable on the supposed guaranty, to what extent the supposed guarantor is obligated.

A valid guaranty requires *its own terms*, distinct from those of the principal obligation.  If the terms relating to HLF's representation of Cuker were removed from the contract, all that would remain are the one reference to Atalla as guarantor in the first paragraph, and a signature block identifying Atalla as "individual guarantor."  A guaranty cannot exist without terms.

As noted by the Arkansas Supreme Court, a guarantor "is a favorite of the law."  His liability "is not to be extended by implication beyond the express limits or terms of the instrument, or its plain intent."  *National Bank of East Arkansas v. Collins*, *supra*, 370 S.W.2d at 94.  Because the contract contains no terms whatsoever relating to the alleged guaranty, the only way Atalla's obligations as a guarantor could arise is "by implication."  If there is to be a guaranty, every single term of the guaranty would have to be implied and read into the contract.  Arkansas law prohibits that result.

Because there are no distinct terms for a guaranty, the contract unambiguously and as a matter of law fails to qualify as a personal guaranty, and summary judgment must be denied as to Atalla.

With its Motion, HLF includes an email that HLF contends demonstrates the intent of Atalla to be a guarantor.  Plaintiff's Exhibit 3.  Atalla objects to this Exhibit on the grounds that it lacks relevance.  Where parties "make a contract in clear and unambiguous language, it is the duty of the courts to construe it according to the plain meaning of the language employed."  *Miller v. Dyer*, 243 Ark. 981, 984, 423 S.W.2d 275, 277 (1968).  It is only when there is an ambiguity that parol or extrinsic evidence is considered: "the initial determination of the existence of an ambiguity rests with the trial court, and if ambiguity exists, then parol evidence is admissible and the meaning of the term becomes a question for the factfinder."  *Coble v. Sexton*, 71 Ark.App. 122, 125, 27 S.W.3d 759, 762 (2000), citing *Fort Smith Appliance and Serv. Co. v. Smith*, 218 Ark. 411, 236 S.W.2d 583 (1951).

The contract is unambiguous because it sets forth absolutely no terms for the guaranty, and thus cannot qualify as a guaranty.  Exhibit 3 is extrinsic or parol evidence that the Court should not consider.

To the extent the Court sees it appropriate to consider Exhibit 3, the email in that Exhibit does not help Plaintiff's cause.  In that email, Mark Henry tells Atalla that Atalla is not HLF's client; Cuker is HLF's client: "You are not my client – Cuker Interactive, LLC is my client." Plaintiff's Exhibit 3.  However, the very first paragraph of the contract identifies both Cuker and Atalla as "Client": "This Contract for Legal Representation ('Agreement') between Henry Law Firm ('HLF') and Cuker Interactive, LLC and Adel Atalla (guarantor)(*together 'Client'*)…." (Emphasis added.)  Henry's email in Exhibit 3 is thus inconsistent with a term HLF employed in the contract, and thus does not help clarify anything.  If Atalla is a client, then he is not a guarantor; if Atalla is not a client, then he can only be a guarantor if there are specific terms relating to the supposed guaranty.  (There are not.)

Atalla contends that there is no ambiguity here: the contract cannot qualify as a guaranty under Arkansas law because of the complete absence of any terms for the guaranty.  However, if the Court considers the contract to be ambiguous, Exhibit 3 does not help HLF's Motion. Exhibit 3 still does not suggest any specific terms that form the guaranty, as required, and the email is inconsistent with the contract's language.  To the extent there is some ambiguity, the ambiguity must be strictly construed against HLF as the drafter of the document: "[O]ne of the rules of contract construction or interpretation is that any ambiguities will be construed strictly against the drafter of the contract."  *First National Bank of Izard County v. Garner*, 86 Ark.App. 213, 218-219, 167 S.W.3d 664, 668 (2004).

Either way, there is no valid personal guaranty, and HLF is not entitled to summary judgment against Atalla.

**B.     There is a genuine dispute of material fact as to the amount owed by Cuker because
HLF charged hourly rates higher than those specified in the contract.**

Atalla's liability in this case can only be pursuant to the alleged personal guaranty.

"Generally, a guarantor is not liable to the creditor ***unless the debtor is also bound under the***

***principal contract***."  *Dean Leasing, Inc. v. Van Buren County*, 27 Ark.App. 134, 137, 767

S.W.2d 316, 318 (1989) (emphasis added); *see also*, *National Bank of East Arkansas v. Collins*,

236 Ark. 822, 826, 370 S.W.2d 91, 94 (1963).  A guarantor's liability "is co-extensive with and

does not exceed that of the principal…."  *Id.*, 236 Ark. at 826-827.  Atalla can only be liable on

the alleged guaranty to the extent Cuker is liable under the contract.  Even if there were a

legitimate personal guaranty here, HLF is not entitled to summary judgment because there is, at

the very least, a genuine issue of material fact as to the amount Cuker owes under the contract.

The first rule of interpretation of a contract is to give to the language employed the

meaning that the parties intended.  In construing any contract, a court must consider the sense

and meaning of the words used by the parties as they are taken and understood in their plain and

ordinary meaning.  The best construction is that which is made by viewing the subject of the

contract, as the mass of mankind would view it, as it may be safely assumed that such was the

aspect in which the parties themselves viewed it.  It is also a well-settled rule in construing a

contract that the intention of the parties is to be gathered, not from particular words and phrases,

but from the whole context of the agreement.  *Alexander v. McEwen*, 367 Ark. 241, 244, 239

S.W.3d 519, 522 (2006), quoting *Coleman v. Regions Bank*, 364 Ark. 59, 65, 216 S.W.3d 569,

574 (2005).

The contract specifies the hourly rates to be charged for the personnel working on the

matter.  The parties agreed that: 1) Mark Henry's time was to be billed at $385 per hour; 2)

Adam Hopkins' time was to be billed at $245 per hour; 3) the time of "associate attorneys" was

to be billed at $150 per hour; 4) the work of "paralegals and assistants" was to be billed at $80

per hour.  Plaintiff's Exhibit 1, ¶ 4.)

John Pesek is an attorney whose work was billed by HLF.  Pesek's name is not specifically set forth in paragraph 4 of the contract.  Under the rules of contract interpretation, Pesek must therefore fall within one of the general categories of "associate attorneys" or "paralegals and assistants."  Given that Pesek is an attorney, the only reasonable construction of the contract is that Pesek qualifies as one of the "associate attorneys."  His time must therefore be billed at $150 per hour.  However, there were a considerable number of instances when Pesek's time was billed at a much higher hourly rate – typically either $235 or $245 per hour.  This resulted in billing of $106,502.30 for Pesek's work in excess of the $150 hourly rate authorized by the contract.  Worthington Declaration, ¶¶ 3-4.

As noted above, under the contract's express terms, Adam Hopkins' work was to be billed at $245 per hour.  HLF started billing for Hopkins' work at $245 per hour, but then raised the rate being billed for Hopkins' work to $260 per hour.  There is no provision in the contract that allowed HLF to increase any of the rates unilaterally.  Plaintiff has submitted no evidence indicating that Cuker agreed to a rate increase for Hopkins' hourly rate, or that the contract was ever modified to allow for a higher rate for Hopkins' work.  Thus, under the terms of the contract, HLF is entitled to only $245 per hour for Hopkins' work.  The billing entries where Hopkins' work was billed in excess of $245 per hour resulted in $7,766.25 of billing in excess of the rate specified by the contract.  These over-charges total $114,268.55.  Worthington Declaration, ¶¶ 5-6.

HLF's Motion discusses a provision in the contract that states: "If Client believes an invoice is incorrect or wants more information about a transaction on an invoice, please write to HLF within thirty (30) days of the date appearing on the invoice with Client's name, invoice number, the dollar amount of suspected error, and a description of the suspected error."

Plaintiff's Exhibit 1, ¶ 8.  HLF may argue that, because Cuker did not write to HLF within 30 days after invoices with the higher hourly rates were issued, Cuker may not now complain about these higher rates in opposing summary judgment.  That argument is not supported by any reasonable interpretation of the contract language.

Paragraph 8 merely ***asks*** Cuker to write to HLF within 30 days if an invoice is incorrect. It says, "please write to HLF" if Cuker believes an invoice is incorrect.  There is nothing in the language that states or even suggests that Cuker agreed to waive the right to challenge an incorrect invoice if Cuker did not write to HLF to complain about the invoice within 30 days. There is no language in the contract stating or suggesting that Cuker agreed to accept, as final and conclusive, the amount of an invoice if Cuker did not write within 30 days to complain.

Interpreting the contract to bind Cuker to the amount of an invoice if no complaint is submitted within 30 days would be unreasonable, absent specific language to that effect.  Clients trust their attorneys to handle legal matters for them, and clients often become pre-occupied with the progress of litigation.  A client, trusting that an attorney is billing properly, may not always have the opportunity to review every aspect of an invoice after an attorney sends the invoice. The client has the right to assume that the lawyer is billing properly, given that an attorney owes the client a fiduciary duty of the utmost honesty and loyalty.  *Cole v. Laws*, 349 Ark. 177, 185-186, 76 S.W.3d 878, 883 (2002).  Accordingly, a client should not lose the ability to complain of overcharges after 30 days, unless the contract contains specific language indicating the client intended and agreed to give up that right.  While the contract here asks Cuker to write HLF within 30 days if an invoice contains mistakes, it does not spell out the intent that Cuker would thereafter lose the right to complain of a mistake, and would be bound after 30 days to the amount of an invoice, no matter how much in error that invoice might be.

At best for HLF, the contract is ambiguous on this issue. An ambiguity will be found when a provision is susceptible to more than one reasonable interpretation. *Unigard Security Ins. Co. v. Murphy Oil USA, Inc.*, 331 Ark. 211, 962 S.W.2d 735 (1998). It is a reasonable interpretation that, while the contract asked Cuker to write about any mistakes in an invoice within 30 days, there is no language stating that failure to do so means Cuker accepts the invoice amount as final and conclusive. To the extent there ***might*** be another reasonable interpretation, the contract is ambiguous. HLF prepared this contract. "[O]ne of the rules of contract construction or interpretation is that any ambiguities will be construed strictly against the drafter of the contract." *First National Bank of Izard County v. Garner*, *supra*, 167 S.W.3d at 668; *see also*, *Sturgis v. Skokos*, 335 Ark. 41, 52, 977 S.W.2d 217, 222 (1998) ("ambiguity in an instrument is construed against the drafter"). Any ambiguity must therefore be construed against HLF, and HLF is not entitled as a matter of law to the amounts billed in excess of the hourly rates specified in the contract.

**C.      There is a genuine issue of fact as to the reasonableness of HLF's fees in light of the block-billing in many of the HLF invoices.**

Under the Arkansas Rules of Professional Conduct, a lawyer's fee must be reasonable. AR R RPC 1.5(a). Thus, through a contract with a client, the lawyer's fees charged pursuant to that contract must be reasonable. HLF is thus entitled only to reasonable fees under the contract.

Many courts, including this Court, have discussed that "block billing" is a disfavored practice by attorneys. *See*, e.g., *Southland Metals, Inc. v. American Castings, LLC*, No. 5:13-CV-05049, 2014 WL 4793713, at *2 (W.D. Ark. 2014). There are a number of instances where HLF block billed its time, making it difficult if not impossible to ascertain what amount of time was spent on a specific task. A stark example of this practice was a single billing entry, on one day, by an unnamed "Discovery Assistant," of 62.5 hours where the work was identified only as "intensive review of Wipro production." HLF's Exhibit 11, p. 3. It is of course impossible for

11

one person to spend 62.5 hours doing any task on any one given day, so this entry creates a genuine issue of fact about the reasonableness of the HLF bills.

There are a number of other examples of block billing that create an issue of fact as to the reasonableness of the HLF fees charged:

• A billing entry by Adam Hopkins on May 20, 2016 for 12:45 for numerous different tasks.  HLF's Exhibit 6, p. 12.

• A billing entry by Adam Hopkins on May 23, 2016 for 11 hours for numerous different tasks.  HLF's Exhibit 6, p. 13.

• A billing entry by John Pesek on June 20, 2016 for 10 hours for numerous different tasks.  HLF's Exhibit 7, p. 3.

• A billing entry by Adam Hopkins on June 20, 2016 for 15:45 for numerous tasks. HLF's Exhibit 7, p. 3.

• A billing entry by Adam Hopkins on August 8, 2016 for 11:45 for numerous different tasks.  HLF's Exhibit 10, p. 2.

• A billing entry by Adam Hopkins on August 9, 2016 for 7:30 for numerous different tasks.  HLF's Exhibit 10, p. 2.

• A billing entry by John Pesek on August 9, 2016 for 7:30 for numerous different tasks. HLF's Exhibit 10, p. 2.

• A billing entry by Adam Hopkins on August 12, 2016 for 8:54 for numerous different tasks.  HLF's Exhibit 10, p. 3.

• A billing entry by John Pesek on August 12, 2016 for 8 hours for numerous different tasks.  HLF's Exhibit 10, p. 3.

• A billing entry by Adam Hopkins on August 17, 2016 for 12:15 for several different tasks.  HLF's Exhibit 10, p. 4.

• A billing entry by Adam Hopkins on August 30, 2016 for 10:45 for numerous different tasks.  HLF's Exhibit 11, p. 3.  (August 30 was a good billing day for HLF considering that Mr. Hopkins billed more than 10 hours and an assistant billed more than 62 hours that day.)

• A billing entry by John Pesek on October 18, 2016 for 10:12 for numerous different tasks.  HLF's Exhibit 13, p. 3.

• A billing entry by Mark Henry on March 9, 2017 for 9:45 for numerous different tasks. HLF's Exhibit 23, p. 3.

• A billing entry by Adam Hopkins on March 13, 2017 for 11:15 for numerous different tasks.  HLF's Exhibit 23, p. 3.

• A billing entry by Mark Henry on March 14, 2017 for 12:00 merely identified as "Work with Aaron and Nikolaj regarding trial preparation."  HLF's Exhibit 23, p. 3.

• A billing entry by Adam Hopkins on March 15, 2017 for 15:30 for numerous different tasks.  HLF's Exhibit 23, p. 3.

These are only *some* examples of block billing that a reasonable jury could conclude may be unreasonable based on block billing without specific identification of the time spent on a given task.  There is therefore a genuine issue of material fact as to the amount of fees to which HLF is entitled.

## IV.

## CONCLUSION

HLF is not entitled to judgment as a matter of law as to Defendant Atalla because there is no valid personal guaranty through which Atalla is a guarantor of Cuker's obligations under the contract.  Even if there were a valid guaranty, there is a genuine issue of material fact as to the

amount of fees to which HLF is entitled.  Defendant Atalla therefore respectfully requests that the Court deny the Motion for Summary Judgment.

                                         Respectfully Submitted,

Dated: December 19, 2018                 Lloyd W. Kitchens
                                         Arkansas Bar No. 99075
                                         THE BRAD HENDRICKS LAW FIRM
                                         500 Pleasant Valley Drive, Building C
                                         Little Rock, AR 72227
                                         Telephone: 501-221-0444
                                         Facsimile: 501-661-0196
                                         tkitchens@bradhendricks.com

                                         */s/ Deborah A. Wolfe*
                                         Deborah A. Wolfe
                                         Pro Hac Vice
                                         WOLFE LEGAL GROUP, P.C.
                                         402 W. Broadway, Suite 400
                                         San Diego, CA 92101
                                         Telephone: (619) 234-3363
                                         Facsimile: (619) 231-1989
                                         dwolfe@wolfelegalgroup.com

                        CERTIFICATION OF SERVICE

        I hereby certify that on the 19th day of December, 2018, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF System, which shall send notification of such filing to the following:

                Tim Cullen, Esq.
                tim@cullenandcompany.com

                                         */s/ Deborah A. Wolfe*
                                         Deborah A. Wolfe