IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

**HENRY LAW FIRM**                                                                                  **PLAINITFF**

VS.                                          **CASE NO. 5:18-CV-5066**

**CUKER INTERACTIVE, LLC and**                                              **DEFENDANTS**
**ADEL ATALLA**

**RESPONSE OF DEBORAH A. WOLFE AND BRIAN P. WORTHINGTON
IN OPPOSITION TO HENRY LAW FIRM'S
<u>MOTION FOR ATTORNEY'S FEES AND COSTS</u>**

Henry Law Firm ("HLF") seeks sanctions against, among others, Deborah A. Wolfe and Brian P. Worthington – two attorneys who represent Defendants Cuker Interactive, LLC ("Cuker") and Adel Atalla ("Atalla").

The motion should be denied because sanctions are entirely unwarranted under 28 U.S.C. § 1927.  An award of sanctions under section 1927 is an extreme measure.  As the Eight Circuit notes, it is a "serious matter and should be approached with circumspection."  Sanctions under this section are only allowed "when attorney conduct, viewed objectively, manifests either intentional or reckless disregard of the attorney's duties to the court."

The conduct of Wolfe and Worthington does not come anywhere near that level.  Wolfe and Worthington worked diligently to ensure that arguments that were made were reasonable in nature and factually based.  HLF's motion disregards evidence that HLF's principal attorney, Mark Henry, admitted in deposition that the primary argument made in opposing HLF's summary judgment motion had merit.

HLF also fails to comply with section 1927's requirements regarding proof of the limited attorney's fees recoverable as sanctions.

II.

**ARGUMENT**

HLF's motion seeks attorney's fees from Wolfe and Worthington under two different statutes: 28 U.S.C. § 1927, and FRCP 37. See Dkt. 132, HLF's brief in support of motion, p. 3. An award of sanctions is unwarranted under both statutes.

**A.     An extreme award of sanctions is unwarranted under 28 U.S.C. § 1927 because Wolfe and Worthington did not act "vexatiously and unreasonably."**

An attorney may be required to pay another party's costs or attorney's fees where the attorney multiplies the proceedings "unreasonably and vexatiously":

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

28 U.S.C. § 1927 (hereinafter "section 1927"). As the language of the statute indicates, the only costs and fees that may be recovered from the attorney are those that were "incurred because of such conduct."

Section 1927 "is penal in nature." *Lee v. L.B. Sales, Inc.*, 177 F.3d 714, 718 (8th Cir. 1999). Courts agree that it must therefore be "strictly construed." *Ibid.*; *Dreiling v. Peugeot Motors of America, Inc.*, 768 F.2d 1159, 1165 (10th Cir. 1985); *United States v. Ross*, 535 F.2d 346, 350 (6th Cir. 1976); *LaSalle Nat. Bank v. First Connecticut Holding Group*, 287 F.3d 279, 288 (3d Cir. 2002). "The imposition of sanctions is a serious matter and should be approached with circumspection." *Lee v. L.B. Sales, Inc.*, supra, 177 F.3d at 718. Section 1927 should be construed and applied "with great caution." *LaSalle Nat. Bank v. First Connecticut Holding Group*, supra, 287 F.3d at 289.

Courts must be careful "so as not to stifle the enthusiasm or chill the creativity that is the very lifeblood of the law." *Ibid.* Applied to broadly, there is a great risk that section 1927 will

"dampen the legitimate zeal of an attorney in representing his client." *Lee v. L.B. Sales, Inc.*, *supra*, 177 F.3d at 718.  Punishment under this statute is therefore "sparingly applied." *Meadowbriar Home for Children, Inc. v. Gunn*, 81 F.3d 521, 535 (5th Cir. 1996).

This concern is seen in the statute's specific language.  "Congress intended to impose a sanction on conduct more culpable than mere unintentional discourtesy to a court when it conjoined the word 'vexatiously' with 'unreasonably.'"  The term "vexatious" is defined to mean "lacking justification and intended to harass." *United States v. Ross*, *supra*, 535 F.2d at 349.  Sanctions under section 1927 should therefore "flow only from an intentional departure from proper conduct, or, at a minimum, from a reckless disregard of the duty owed by counsel to the court." *Ibid.*

As discussed by the Eighth Circuit, a court should impose sanctions under section 1927 only "when attorney conduct, viewed objectively, manifests either intentional or reckless disregard of the attorney's duties to the court." *Lee v. L.B. Sales, Inc.*, *supra*, 177 F.3d 714, 718; SPV-LS, LLC v. Transamerica Life Ins. Co., , -- F.3d. --, 2019 WL 124211 at *4 (8th Cir. 2019).

Wolfe and Worthington file their own, separate opposition to HLF's motion because "the district court must provide an attorney with fair notice and an opportunity to be heard before ordering the reimbursement of fees" under section 1927. *Clark v. United Parcel Service, Inc.*, 460 F.3d 1004, 1011 (8th Cir. 2006).

**1.    The summary judgment opposition was primarily based on information the Court never previously had the opportunity to <u>consider, and was based on admissions by Mark Henry in deposition.</u>**

One basis for HLF's request for fees from Wolfe and Worthington is the opposition filed to HLF's motion for summary judgment.  HLF notes that the Court granted the motion, and rejected Atalla's arguments, because the Court had already scrutinized HLF's billings as part of the underlying *Walmart* case.  However, the primary argument made in opposing HLF's

3

summary judgment motion was that, in the *Walmart* case, HLF billed for the work of two attorneys, Adam Hopkins and John Pesek, at hourly rates in excess of those specified in the HLF-Cuker contract for legal representation ("contract"). When the Court reviewed HLF's billing as part of the *Walmart* case, the Court did not have the contract before it. HLF did not include the contract as an exhibit to its motion for attorney's fees in the *Walmart* case, and neither did Walmart when opposing the motion for attorney's fees.

The Court therefore had no opportunity in the *Walmart* case to consider whether HLF billed any time at rates that exceeded those specified in the contract. HLF had no incentive to raise that issue in the *Walmart* case because HLF prepared and filed the motion for attorney's fees, and had every incentive to recover as much of the fees it billed as possible.

This is not a circumstance where Wolfe and Worthington simply made any argument they could think of in opposing HLF's summary judgment motion in this case. When contemplating the summary judgment opposition, Wolfe and Worthington conferred at great length to determine what if any arguments they could make that the Court had not previously had the opportunity to consider. Wolfe and Worthington knew that the contract was not before the Court in the *Walmart* case, and therefore determined that it was reasonable to argue that HLF is not entitled under the contract to recover fees billed in excess of the rates specified in the contract. Declaration of Deborah A. Wolfe, filed herewith, ¶¶ 2-4.

This was not "vexatious" conduct. This was not conduct "lacking justification and intended to harass." *United States v. Ross*, *supra*, 535 F.2d at 349. This was not conduct manifesting "either intentional or reckless disregard of the attorney's duties to the court." To the contrary, Wolfe and Worthington carefully considered the arguments to make in opposing HLF's summary judgment motion, specifically so they could adhere to their duties to the Court. Wolfe and Worthington prepared the opposition mindful only to assert arguments the Court did not

4

have the opportunity to consider when evaluating the attorney's fees as part of the *Walmart* case. Wolfe Declaration, ¶¶ 2-4.

Wolfe and Worthington saw even more justification in asserting this argument based on the deposition testimony of HLF's principal attorney, Mark Henry. In his deposition, taken five days before Wolfe and Worthington filed the summary judgment opposition, Henry ***admitted*** that some of Pesek's work was wrongly billed in excess of the rate specified in the contract, and ***admitted*** that the client should receive a credit for that. The contract specifies that work for associate attorneys like Pesek would be billed at $245 per hour. Exhibit A filed herewith, contract. But HLF often billed for his work at $285 per hour:

> A.   So the discrepancy could be that John Pesek's time assigned in QuickBooks was 285 and my accountant or my bookkeeper did not make -- on this one invoice that's 1944, he has three entries, that she did not make a correction. And in my review of the invoice prior to sending it, I did not see that $40 difference.
>
> Q.   Okay.
>
> A.   But the correct billing rate should be 245, and I totally -- I would believe that the client or Mr. Karch or anybody -- I mean, I didn't keep these secret. I circulated it to them. But I would believe that they would be entitled to that $40 credit there.

Exhibit B filed herewith, Henry Deposition Transcript, pp. 82-83.

Henry also admitted at deposition that HLF billed for some of the work of attorney Adam Hopkins at a higher rate than specified in the contract. Henry testified that HLF raised the rate for Hopkins at the beginning of the next year, but Henry admitted that the contract does not specify that rates could be increased, that HLF never sent notice to Cuker of an increased rate, and that the contract was never modified to allow for an increased rate. Exhibit C filed herewith, Henry Deposition Transcript, pp. 76-79.

Wolfe and Worthington wanted to include these portions of the deposition transcript as part of the summary judgment opposition, but despite having asked for an expedited transcript,

5

they did not receive the transcript until two hours after the filing the opposition. Wolfe Declaration, ¶¶ 5-6.

Regardless, in arguing that HLF billed for some time in excess of rates permitted by the contract, Wolfe and Worthington did not act "vexatiously and unreasonably" because Henry had admitted in his own deposition that the rates were higher than authorized by the contract.

This is not a circumstance where Wolfe and Worthington made arguments they knew lacked merit. This is not a circumstance where they made arguments they knew the Court had considered and rejected previously. The opposition Wolfe and Worthington prepared was quite limited in scope, and was based on Henry's own acknowledgment that some of the time billed was at rates exceeding those specified in the contract. As seen in Exhibits B and C, Henry did discuss in deposition that Cuker and its corporate counsel saw the bills with the higher rates and did not complain. However, there was at least sufficient information on which Wolfe and Worthington could argue this was a triable issue of fact.

Wolfe and Worthington were representing Atalla, and they had a fiduciary duty to represent him zealously. The summary judgment opposition was not "vexatious and unreasonable." The opposition reflects the attorneys' "legitimate zeal" that section 1927 should not be utilized to "dampen." *Lee v. L.B. Sales, Inc.*, *supra*, 177 F.3d at 718.

    **2.**    **HLF has produced no evidence of any "vexatious or unreasonable" conduct during Henry's deposition, and Wolfe's questioning of Henry <u>was fair and within the bounds of allowable discovery.</u>**

HLF also argues that Wolfe and Worthington[1] should be sanctioned because, at Henry's deposition of "nearly 7 hours,"[2] Wolfe asked "unlimited questions designed to second-guess trial

---

[1] HLF does not explain or even try to justify how Worthington can be sanctioned for conduct during a deposition he did not attend. Wolfe Declaration, ¶ 5.

[2] Henry was not deposed for 7 hours. Exclusive of breaks, Henry was deposed for 4 hours, 26 minutes. Wolfe Declaration, ¶ 7.

decisions of Mr. Henry, notwithstanding the Court's multiple orders dismissing the wholly implausible and untimely counterclaims." Dkt. 131, motion, p. 4. Curiously, HLF made that contention in its motion, but did not argue this issue anywhere in its brief in support.

More importantly, HLF did not attach any portions of the Henry deposition transcript to support that contention, and HLF's counsel, Tim Cullen, said nothing about this in his declaration submitted with the motion. In other words, HLF asks for sanctions against Wolfe and Worthington but provides no evidence whatsoever of the allegedly sanctionable conduct.

"A district court must enter findings of fact in ruling on a motion for sanctions" under section 1927. *Lee v. L.B. Sales, Inc.*, *supra*, 177 F.3d at 718. "Findings ensure that the sanctions address the excess costs resulting from the misconduct, provide the sanctioned party an adequate opportunity to respond, and facilitate meaningful appellate review." *Ibid.* By failing to provide the Court with the Henry deposition transcript, and by failing to specifically identify even one question from the deposition that was supposedly improper, HLF has made it impossible for the Court to make the specific findings required to support a sanctions award under section 1927.

Contrary to HLF's unsupported argument, Wolfe's conduct during Henry's deposition was not "vexatious and unreasonable." Wolfe asked broad questions at Henry's deposition that were designed to explore issues that could affect the breach of contract claim and the summary judgment motion. A deposition is a discovery device, so the questions asked should be broad so as to uncover any possibly admissible evidence, as well as any information that might lead to admissible evidence. In the 4 hours, 26 minutes of the deposition, Wolfe asked questions she felt were necessary to ask to explore the merits of HLF's claim for breach of contract. Wolfe Declaration, ¶ 8.

HLF complains of Wolfe's questions during Henry's deposition. However, neither Henry nor HLF's counsel, Tim Cullen, ever objected even *once* to any question during the

deposition. Wolfe Declaration, ¶ 9. If Henry and Cullen believed that Wolfe's questions were so "vexatious and unreasonable," they could have *and should have* objected to the supposedly improper questions so the parties could meet and confer on the matter. Henry and Cullen cannot in good conscience argue that deposition questions were vexatious and unreasonable when they never once objected to the questions they contend were so egregious as to warrant sanctions against an attorney.

Wolfe and Worthington were not "vexatious and unreasonable" in deposing Henry, and HLF has provided no evidence supporting its position that sanctions are warranted.

### 3. Sanctions can only be awarded as to the fees incurred "because of" the wrongful conduct, and HLF has provided no evidence of such amounts.

HLF's motion is unclear what amount of sanctions it seeks from Wolfe and Worthington. The motion seeks fees and costs from Defendant Atalla, and mixes in its sanctions claims as to Worthington and Wolfe. HLF states that it seeks $55,819.58 in attorney's fees $1,620.60 in costs. However, HLF does not state whether it seeks these full amounts from Worthington and Wolfe or some other, lesser amount.

As discussed above, no sanctions should be awarded as to Wolfe and Worthington. But HLF's motion is legally and factually deficient because it does not specify the sanctions sought. As seen in HLF's Exhibit 1, HLF seeks fees going back to April 2018, when the case was filed. However, Wolfe and Worthington did not become part of the case until November 5, 2018. Dkt. 79, 80, 81. The amounts awardable under section 1927 are limited to only those fees and costs "reasonably incurred *because of*" the vexatious and unreasonable conduct. § 1927, emphasis added. None of the fees HLF incurred before November 5, 2019 could possibly have been "because of" any conduct of Wolfe and Worthington.

8

Moreover, the only supposedly sanctionable conduct HLF identifies in its motion is the summary judgment opposition and Henry's deposition. Henry has not even tried to identify the fees incurred for the portion of the Henry deposition where Wolfe's questions were supposedly "vexatious and unreasonable." And, the only possible fees incurred "because of" the summary judgment opposition would be the fees incurred in preparing the reply. HLF does not identify those, either.

As noted above, specific factual findings are required for a sanctions award under section 1927 so as to "ensure that the sanctions address the excess costs *resulting from the misconduct*...." *Lee v. L.B. Sales, Inc.*, *supra*, 177 F.3d at 718 (emphasis added). While Wolfe and Worthington dispute vigorously that *any* conduct justifies sanctions, HLF has not provided the Court with sufficient information to support its claim for sanctions, and does not even identify the sanctions it seeks.

    **4.    Amounts paid to Wolfe Legal Group have no bearing on whether sanctions can be awarded, and in any event, HLF's information as to what Wolfe Legal Group has been paid is wrong.**

HLF supports its motion by informing the Court of the amounts HLF *believes* Wolfe Legal Group has been paid for this case. HLF's argument in this regard is inappropriate and irrelevant to a claim under section 1927 (or any other claimed basis for sanctions). This is so for several reasons.

First, nothing in the wording of section 1927 authorizes a sanctions award against an attorney based on how much the attorney has been paid by his or her own client. As noted, section 1927 authorizes sanctions only to the extent of fees and costs incurred "because of" the attorney's vexatious and unreasonable conduct.

Second, HLF relies on incomplete information from Cuker's bankruptcy proceeding and uses that information to *guess* as to how much Wolfe Legal Group has been paid. HLF claims

9

that Wolfe Legal Group was "paid" $192,665.  However, that figure includes a significant amount of money that is still being held in Wolfe Legal Group's Client Trust Account as a retainer.  Cuker had to identify that to the bankruptcy court, but that does not mean Wolfe Legal Group has been "paid" that much.  At the end of the representation, any amounts still in the Client Trust Account in excess of fees billed for work actually done will have to be returned to the client.  HLF's claim that Wolfe Legal Group has actually been paid that amount is pure guesswork – and a wrong guess, at that.  Wolfe Declaration, ¶ 10.

Third, as HLF knows very well, Wolfe Legal Group has performed legal work for Cuker that does not relate to this case.  Wolfe Legal Group's legal work for Cuker pre-dates Wolfe and Worthington's work in this case.  Much of that work was in connection with an AAA arbitration pending in California between Cuker and the Pillsbury firm, which also represented Cuker in the *Walmart* case.  HLF is comparing apples to oranges, and distorts reality when it compares the $192,665 to the fees HLF incurred only in this case.  Wolfe Declaration, ¶ 11.

Fourth, HLF cites the amount supposedly paid to Wolfe Legal Group.  However, HLF seeks sanctions from Wolfe and Worthington individually.  Worthington is Of Counsel to Wolfe Legal Group.  He is not a partner, and therefore does not split a percentage of fees or profits.  HLF contends in its motion that Wolfe and Worthington were "paid handsomely" and "generously compensated."  Dkt. 131, motion, pp. 5, 7.  But because Worthington is Of Counsel, HLF has no proof as to how "generously" or "handsomely" Worthington was paid.  Moreover, while Wolfe is a principal of Wolfe Legal Group, HLF has no information as to how "generously" or "handsomely" she is paid, either.  Wolfe Declaration, ¶ 12.  HLF's argument on how much Wolfe and Worthington were supposedly paid is flawed because HLF seeks sanctions against them, individually, while relying on (flawed) information as to how much the Wolfe Legal Group entity was supposedly paid.

B.  **FRCP has no application here because it relates to motions to compel, discovery orders, and disclosures, none of which are at issue in HLF's motion.**

HLF also relies on FRCP 37 for its sanctions claim against Wolfe and Worthington. However, FRCP 37 relates to motions to compel discovery or disclosure, failures to comply with a court's order regarding discovery, and failures to disclose information. No conduct alleged by HLF falls within the scope of Rule 37.

Wolfe and Worthington request that the Court deny HLF's motion.

Respectfully Submitted,

Dated: January 31, 2019

*/s/ Deborah A. Wolfe*
Deborah A. Wolfe
Pro Hac Vice
WOLFE LEGAL GROUP, P.C.
402 W. Broadway, Suite 400
San Diego, CA 92101
Telephone: (619) 234-3363
Facsimile: (619) 231-1989
dwolfe@wolfelegalgroup.com

CERTIFICATION OF SERVICE

I hereby certify that on the 31st day of January, 2019, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF System, which shall send notification of such filing to the following:

Tim Cullen, Esq.            Lloyd "Tre" Kitchens
tim@cullenandcompany.com    tkitchens@bradhendricks.com

*/s/ Deborah A. Wolfe*
Deborah A. Wolfe